Case number 245606, Brian Cummings et al. v. Bretton Keefer et al., oral argument not to exceed 15 minutes per side, with 15 minutes for the appellants and 15 minutes to be shared by the appellees. Mr. Spragans, you may proceed for the appellants. Good afternoon, Your Honors, John Spragans. On behalf of the appellants, Brett Keefer and Absoun Haig, I'd like to reserve three minutes for rebuttal, please. Another case for you all about attorney's fees today in a different context, though. This is fundamentally a dispute between an attorney and a client. Mr. Cummings, one of the appellees, seeks to compel my client, Mr. Keefer, to pay him a portion of an attorney's fee that Mr. Keefer believed was owed solely to Ms. Haig. Now, in an attempt to sidestep a mediation and arbitration clause in the representation agreement that Mr. Cummings drafted and signed with Mr. Keefer, he has added Ms. Haig and the former law firm Cummings-Munookian, which is in bankruptcy. Ms. Haig is an attractive target at the beginning of the adversary proceeding in this case. She was required to turn over $700,000 into the bankruptcy court on a TRO. That's been pending now for five years, and I expect that we will move for that TRO to be dissolved. But fundamentally, this is a dispute between an attorney and a client that is governed by an arbitration provision in the representation agreement that the attorney drafted. It is a capacious arbitration clause. It includes a covenant not to sue. It includes language that binds both the attorneys and the client not to file a lawsuit over anything arising from the representation. Can I just stop you there? Because your case really revolves around whether or not there is this arbitration clause in this contract. So one is, like, does this arbitration clause bind the parties here who are the attorneys rather than the attorney and the client? But a preliminary question is whether that contract is even before us, right? So the bankruptcy court said, I'm not going to take judicial notice of this. You didn't comply with my court rules about documents and exhibits. You asked for judicial notice. The judge said no. You didn't appeal that by saying the judge abused his discretion in not taking judicial notice. Is that even in the record for us to look at? The court assumed for purposes of its ruling that there was this contract with an arbitration provision. However, your Honor is right that the court, in my view, very unusually, held an evidentiary hearing on a motion to dismiss. I'm not regularly a bankruptcy practitioner. And so I didn't understand that the court would be considering evidence on a motion to dismiss. And you are right that we did not formally appeal that as an abuse of his discretion. So where does that leave you? I mean, where does that leave us? Like the bankruptcy court excluded evidence that is the central evidence to your case and you didn't appeal that. So where does that leave us? The fact that the court excluded that evidence, but then went on to consider, I mean, to base a ruling on that evidence, to me suggests that we can argue about the court's discretion or, as we would say, a de novo standard in applying the bankruptcy code to trump the Federal Arbitration Act. So you'd cast it as an alternative holding? Yes. So the alternative holding is, I'm not going to look at this, but if I were going to look at this, then I would say it doesn't form a legally binding contract and it's inconsistent with the purposes of bankruptcy. That's right. And the court, I mean, the court, it did look at it despite finding that it wasn't properly in evidence. So I don't know how to reconcile that tension. Then the district court on appeal also looked at the arbitration provision and based that court's ruling on it as well. Of course, we review what the bankruptcy court did. We do not review what the district court did. Correct, Your Honor. And so that's why we argue that the bankruptcy court abused its discretion in finding that the arbitration provision of the representation agreement should yield to the bankruptcy code, that it frustrated the purpose of the bankruptcy code. But you didn't really brief that here either. All you argued is that that violated the party presentation principle. Yes, certainly, Your Honor. We don't think that that issue was fulsomely presented to the bankruptcy court. The trustee didn't even oppose the motion to dismiss or stay and, in our view, has waived her position on this entire issue. The trustee didn't file a brief. You can look at the docket in the bankruptcy court, and the trustee was silent on that despite now arguing that the request to stay was not really a request to stay and parsing the details of that motion. She did not do so in the bankruptcy court. On the merits, it seems to me that, I mean, what's your best argument that compelling arbitration would not inherently conflict with the purposes of the bankruptcy code here? Well, because the fundamental dispute is an attorney-client dispute about an attorney's fee, about whether Mr. Kiefer owes part of that money. I mean, the court characterized, the district court and Applebee's in their briefing characterized Mr. Kiefer as not having an interest in this. But Mr. Kiefer is a party to the contract. Mr. Kiefer cares which attorney he's paying his money to, effectively.  Why does he care at all? Well, because his view was that Mr. Cummings didn't provide him effective representation, and then Mr. Cummings withdrew from the representation, and is not entitled to be paid. So I mean, a litigant has... So if he's going to pay $100,000 in attorney's fees, you're saying he has some stake in how that's... I mean, he's out $100,000 no matter what, right? Certainly as an economic proposition, it's the same amount of money. However, whether it goes to an attorney that he doesn't believe provided him effective counsel or one who achieved a settlement for him, he does have a view about that. And I think... So it's beyond economics, frankly. The FAA is a very powerful statute, and the bankruptcy court really based its holding on the notion that there would be piecemeal litigation if the arbitration clause were enforced. However, that overlooks the fact that Mr. Kiefer and Mr. Cummings have the dispute. And by bringing the bankruptcy estate and Ms. Haig into the dispute, these appellees have really created the risk of piecemeal litigation. The actual dispute is between an attorney and a client, and that can be mediated and then arbitrated, separate and aside from the bankruptcy proceeding. But did you even argue that in your brief here? I feel like the bankruptcy court ruled that the focus of what the bankruptcy court talked about was piecemeal litigation. And your response on that issue is that isn't properly before this court because of the party presentation issue. You didn't really argue, well, it wouldn't be piecemeal litigation, or if it is piecemeal litigation, that's okay for these reasons, or you misapplied the factors, or you used the wrong factors. You didn't say any of that. Well, and I apologize if we didn't, I guess, characterize the judge's ruling and then go factor by factor. I do think that the one factor that the whole ruling really turns on is the risk of piecemeal litigation. And that's why we reiterated our view that the FAA applies here as opposed to the bankruptcy code, which should yield to it. Do you concede, counsel, this is an abuse of discretion standard here? We have argued that it's a de novo review standard. However, the district court found that it was an abuse of discretion standard. Under either standard, we believe that the bankruptcy court's determination should be reversed because of the strong federal policy in favor of arbitration and the fundamental nature of the attorney-client conflict here. I have no idea how much time I have, Your Honors, but I... I was just noting that we don't... Oh, there we go. The clock, it stopped for a second, so I'm trying to get it to the right time. All right, so... And you can only do it in one-minute intervals, so I was about to start it here in like 30 seconds. So you're saying he has three minutes left, or you're saying he has... Yeah, because it's been about nine and a half minutes since we started.  So we have about three... You have about three minutes left. That's fine. I'll try and look at that analog clock that's right behind you guys. That's fine, Your Honors. Like I said, the risk of piecemeal litigation is something that was created by Appelese here. Everyone is bound by the arbitration provision. Ms. Haig signed it. Mr. Kiefer signed it. Mr. Cummings signed it and drafted it. So even if you add these extra parties into this dispute, as Mr. Cummings did by filing this matter, whether or not they signed the exact same agreement, the language of the arbitration provision is capacious. It binds the client and the attorneys who represented them, and the Federal Arbitration Act is a strong federal law that I teach my students at Vanderbilt Law School. We all have to pledge allegiance to the FAA. Courts enforce it to the fullest extent, and here the bankruptcy court very casually found that the risk of piecemeal litigation outweighed it, and in our view, that was incorrect. If the panel has any questions, I'm happy to answer them. Thank you for your time today. Thank you. All right. We'll hear from counsel for Mr. Cummings. Your Honor, if I may, I'm Philip Young on behalf of the trustee. Oh, the trustee is arguing next. If that's permissible. Yes, it's great. Thank you, Your Honor. May it please the court. My name is Philip Young, and as I said, I represent Jeanne Burton, who is the court-appointed Chapter 7 bankruptcy trustee for a defunct law firm, Cummings, Mnookin, and PLC. I'm joined by Liz Tipping, who represents the other appellee in this matter, Attorney Bryant Cummings. I intend to use my 10 minutes to address a few topics this afternoon or wherever the court would like to go otherwise, but left to my own devices, I'd like to talk about whether this court has jurisdiction in the first place to hear this matter, whether the bankruptcy court properly refused to dismiss this action because the FAA does in fact conflict with the purpose of the bankruptcy code, and time permitting, I'll talk about whether the bankruptcy court violated the party presentation rule. If we don't get to that, Ms. Tipping is prepared to discuss that. She'll then address why the FAA doesn't apply to this matter at all, whether there's a bankruptcy or not. I want to begin with something, just a note, that a bankruptcy trustee always has standing in a bankruptcy case. A bankruptcy trustee does not have to file a response in the bankruptcy court to have standing. In this instance, the bankruptcy trustee knew what Ms. Tipping's response was going to be to the motion to dismiss and was satisfied with that. That's why no formal response was filed at the bankruptcy court and why the bankruptcy court wanted to hear from the trustee, because trustee always has standing. I just didn't want to get off on that issue. I think the first question this court needs to ask itself is whether there is proper jurisdiction to decide this matter, being that this is an order denying a motion to dismiss. I'm sure the court knows that's not a final order, that's an interlocutory order in most cases. In Ray MTG, a 2005 decision from this court, makes that clear, that in most situations, this court only has jurisdiction to hear appeals when both the bankruptcy and the district court orders are final orders. The only relief sought in the appellate's motion that was before the bankruptcy court was dismissal with prejudice, despite the fact that in the title, it also included as alternative relief, a stay pending arbitration. The court will see that that was never asked for in the body of the motion. According to this court's opinion, in Jackson V City of Cleveland, an order denying a motion to dismiss is not a final order. In fact, the district court said the only reason it ruled on the appeal was because it, the district court, interpreted the bankruptcy court's order as one denying a motion to compel arbitration, which would be an appealable order. But that isn't the relief that the appellants sought in their motion, and it's not the relief that the bankruptcy court granted. The bankruptcy court denied a motion to dismiss under 12b1 and 12b6, which would make that a non-final order. The appellants never sought nor received permission to proceed with an interlocutory appeal. Therefore, as a threshold matter, I think this court should find that there is no jurisdiction to consider this appeal any further. That's consistent with the Dorsa v. Maraca life sciences case, which I know that Judge Batchelder wrote a dissenting opinion in, but that is the current rule in the Sixth Circuit that it makes a difference. That's what Congress, Congress has a list of things that, where you can appeal interlocutory appeals in arbitration cases. They're not, a motion to dismiss is not included in that list that Congress has given us. So the first thing is, there's no jurisdiction here. However, even if the court had jurisdiction, we have a waiver problem, and the court noted some of this already. There was no evidence presented. There's no letter in evidence, and by not appealing that issue, the appellants have waived that. By letter, you mean the agreement that contains the putative arbitration agreement? That's right, Your Honor. That's not before the court. It was never admitted into evidence, and so it's not before the court, and that decision in and of itself was never appealed. So then what do you do with all the other stuff the bankruptcy court said? That's all just dictum? Like, the ruling is, this agreement is not in evidence, and then I'm just going to say a bunch of dictum? Your Honor, it's a good question. I think that the judge was trying to belt in suspenders his decision in this case, because he clearly said, I'm not going to consider the letter, and then he went on to consider the letter. Is that an alternative holding? I believe it is, Your Honor. I believe the alternative holding can, but if the court does not accept the fact that there was an arbitration provision in the first place, this appeal is over. So I think jurisdictionally, this appeal is over. If the court doesn't accept that there's an engagement letter to be considered, this appeal is over. Furthermore, as laid out in Bannister v. Knox County Board of Education, if an issue is not appealed to the district court or to the Sixth Circuit, it's waived, and so let's talk about some other things that were never appealed. The issue of what test the judge chose to apply was never appealed. The issue of whether this was a core or non-core proceeding was never appealed. The issue of whether or not these facts pass the seven-factor test that the court laid out in some detail, and that other courts have also used, was never appealed. All of those things are very substantive issues, and waiver would apply. So for those reasons, even if the court has jurisdiction, and even if the court wants to consider the engagement letter in this case, we've still got a major waiver problem because the substance of this order was never appealed. But even if it had been, I want to spend just a few minutes talking about why even if core versus non-core or the test to determine whether or not the FAA conflicts with the code in this case, even if it had been appealed, nonetheless, the bankruptcy court got it right in determining whether the Federal Arbitration Act preempts the bankruptcy code's goal of centralizing all matters related to the administration of a bankruptcy estate. The first thing that courts generally look to is, is this a core or a non-core proceeding? In this case, no party has argued that this is non-core, again, leading to the waiver issue, but no matter, even if this had been challenged, this is a core matter. A core matter is defined as one that is created by bankruptcy law or that could not exist outside of bankruptcy. In January 2020, the bankruptcy trustee sued the appellant, Ahsoon Haig, among others, alleging that Ms. Haig had fraudulently transferred the lawsuit and fee at issue in this case to herself, her law firm, and her husband's law firm, and this allegation in part relied upon 11 U.S.C. 548, which is a cause of action that is only available to bankruptcy trustees and debtors in possession. So the use of 548, in and of itself, means this would be a core matter, even if it had been challenged, which is perhaps why it was not challenged. Then once the court decides that this is a core proceeding, which again, nobody disputes, it must then move on to the second step of the analysis, that is, deciding whether enforcement of the arbitration provisions inherently conflicts with the underlying purpose of the bankruptcy code. There's no uniform test, but all the tests look somewhat similar. In this case, the bankruptcy court applied a rather exhaustive, in rather exhaustive detail, a seven-factor test. Those factors were discussed by the bankruptcy court from the bench. They were laid out in pages 21 through 24 of our brief that we filed with this court. So is it your view that our review of those, the analysis of those factors is an abuse of discretion? Clearly an abuse of discretion, Your Honor. I think courts uniformly say that that is an abuse of discretion. Backing up to the core, non-core question, that strikes me as possibly more of a legal determination. I think that's a de novo review. I believe that is a legal determination. Again, I would say that's not even properly before the court because it's been waived, but yes, I believe that would be de novo, but I believe the applications of the facts to the test is not a de novo review. That's an abuse of discretion. In this case, the district court even specifically noted, kind of went on its own and said, even though this isn't before me, I'm going to look through the judge's application. The district court found that the judge properly applied the test and, in fact, noted specifically two things that stuck out. That is, the likelihood of piecemeal litigation and that the effect that this would have on the administration of the bankruptcy estate. Indeed, the district court noted that the bankruptcy court's determination is, quote, well supported by the bankruptcy record and did not amount to an abuse of discretion. I'm happy to move along with, unless the court has questions about that, I'm happy to move along briefly to the party presentation rule because that really is the only basis upon which this appeal is brought, is the party presentation rule. The party presentation rule requires that courts rely on the parties to frame the issues. That's the words of the Supreme Court. The appellants allege that the bankruptcy court raised the issue sua sponte about whether the bankruptcy code and the FAA conflict, but that simply isn't true and isn't supported by the record. That very issue was raised in pages 7 through 10 of Mr. Cummings' response to the motion to dismiss filed with the bankruptcy court. Both Mr. Cummings and the bankruptcy trustee addressed the issue in oral argument before the bankruptcy court and the bankruptcy court cited some of the law in Mr. Cummings' brief in its holding. Therefore, the only real argument that the appellants bring to this court for overturning the bankruptcy court's order, that is the party presentation rule, is at its core simply misplaced. The fact that the appellants have doubled and tripled down on the party presentation rule is a little confusing to us, but that's where we find ourselves and everything else, Your Honor, I would say has been waived in this appeal. Unless the court has any other questions, I will cede the podium to Ms. Tipping, but for these reasons, I would ask that this court simply uphold the lower courts. Fine. Thank you. Thank you. Your Honor, would you like us to switch to the lectern timer? The light? Yeah. If the light will work consistently, then I'll go with the light. Okay. I will switch to that. Perfect. Thank you. All right. Your light is on. Thank you. Good afternoon. May it please the court, my name is Elizabeth Tipping and I'm here representing Brian Cummings in this matter. I want to address two additional issues that support the lower court's rulings in this case. The first is that even if this court determines that the bankruptcy court got things wrong on whether the bankruptcy code trumps the Arbitration Act in this case, that would only address the claim that involves Appellant Kiefer. There is simply no arbitration agreement at all between Mr. Cummings and Appellant Haig. We heard that Ms. Haig has signed an arbitration agreement. I have not seen that. It is not in the record. It's simply not there. As an initial matter, as has already been acknowledged today, there is no evidence of any agreement properly in the record. To be clear, it was not a surprise that the bankruptcy court had intended to hear evidence on this. The bankruptcy court issued an order in which it stated that it intended to conduct an evidentiary hearing regarding the motion to dismiss or stay arbitration. In that order, the bankruptcy court set out deadlines for filing witness lists and exhibit lists. Right, but the agreement was attached to the motion to dismiss. We're on a motion to dismiss. The agreement is referenced in the complaint, so ordinarily a judge could take judicial notice of that, right? It could. It chose not to in this case, but it wasn't a surprise that there was an expectation that there might be witnesses or exhibits. The motion could have ... It might have been a surprise that he needed to upload the document that courts routinely take judicial notice of. Perhaps, but there's still no authentication of that agreement as well. It was an unauthenticated document that was simply attached to the motion, so we would submit that it was defective either way, whether the belief was we could attach it or needed to present a live witness. Yeah. Do you think that issue has been appealed here? It has not been raised at all by the appellants in this case, but even if the court considers that letter and decides to go ahead and rule on those arguments, the letter does not in any way apply to Appellant Haig. The letter clearly states in its language on the first page, all work on this matter by Cummings, Mnuchin, our firm, will be done by Brian Cummings or Brian Mnuchin. Afsoon Haig. Counsel, I'm struggling with this a bit just because it seems like the record does have It's emails that Mr. Cummings certainly thought it applied and existed, and so I'm a little confused as to why it wouldn't now. The agreement between Mr. Cummings and Mr. Kiefer, Mr. Cummings agreed that that existed and discussed it. There's no agreement anywhere that talks about Ms. Haig. Did he ever say in these emails, Ms. Haig is not part of this or anything like that? I'm not certain which email specifically Your Honor is asking about, but the expectation was that this agreement was Mr. Cummings, Mr. Kiefer, or Cummings, Mnuchin, Mr. Kiefer. Ms. Haig's not mentioned anywhere in the letter. She does not appear in the letterhead. There's no evidence even that in the record that Ms. Haig was even an employee of Cummings, Mnuchin at the time of the representation letter was executed. The law is clear. It's a fundamental principle that a court can only order arbitration of a particular dispute if the parties agreed to arbitrate that particular dispute. The existence of an arbitration agreement involving one party does not equate to consent to arbitrate against all parties. The existence of an arbitration agreement on one type of dispute does not equate to consent to arbitrate on all types of disputes. In this case, Mr. Cummings had no arbitration agreement with Ms. Haig. He did not consent, and there's no evidence that he did consent, to arbitrate disputes between attorneys regarding the division of a fee. So, we would suggest that this, in addition to the question of whether the Bankruptcy Code trumps the Arbitration Act in this case, that the fact that there is no agreement in existence involving Ms. Haig is an additional basis for affirming the ruling of the lower courts. All right. No. All right. Thank you. We will hear rebuttal. Thank you, Your Honors. I was surprised to hear that there's no arbitration agreement that mentions Ms. Haig, or no representation agreement that mentions Ms. Haig, because in the record at page 2090, there is an August 23, 2019 representation agreement that explicitly mentions Ms. Haig as someone who will be working on Mr. Kiefer's case. And of course, the language of the arbitration provision refers to the attorneys, and so that would include and encompass her, even though she is not the one who literally signed it herself. With respect to the notion that the type of dispute at issue here is not one that was contemplated by the arbitration provision, a dispute over an attorney's fee is a quintessential dispute between an attorney and a client. So, you know, given the broad language of the agreement, I believe that this fairly is encompassed by it. With respect to the bankruptcy trustee's standing, we were told that the bankruptcy trustee always has standing, but that is distinct from whether she waived arguments at the district court level that she's now making, or excuse me, the bankruptcy court level that she's now making to this court. Finally, on the question of jurisdiction, the district court construed the bankruptcy court's order as a final order because it adjudicated a request for arbitration, a motion to effectively compel arbitration. I think that it is certainly fair for this court to construe it the same way. Whether a stay was mentioned in the caption, certainly the number one relief that was requested was dismissal, but under any event, it was contemplated as an arbitration. Did you ask for a stay in the, in your requested relief? I have not. Or in the, I mean, the bankruptcy trustee says not even in the body of the argument. I have not recently gone back and reread the language at the concluding section of that brief, so I can't represent to this court one way or the other, but certainly the caption said stay in the alternative to dismissal. And the relief that was requested was to send the parties to arbitration. So I believe, you know, finality should be fairly well established here. And finally, as you mentioned, Judge Larson, the arbitration agreement was attached to the motion. It was the subject of the complaint. The representation agreement was very much at issue in the litigation that Mr. Cummings filed. And so I believe this court can take judicial notice of it. The bankruptcy court certainly ruled on it, even while saying he was not taking judicial notice of it. I thank you for your time. If you don't have any more questions. All right. Thank you. Thank you. Thank you to all parties for your helpful arguments, and we'll issue an opinion in due course.